IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAYDELTA MARITIME INC., | No. C-06-1114 MMC |
|     Plaintiff,<br>  v.<br>HAL ELTZROTH,<br>    Defendant | **ORDER GRANTING IN PART AND DENYING IN PART COUNTER-DEFENDANT BAYDELTA MARITIME INC.'S MOTION TO DISMISS AND TO STRIKE JURY DEMAND; VACATING HEARING** |
| HAL ELTZROTH,<br>    Counterclaimant<br>  v.<br>BAYDELTA MARITIME, INC., et al.,<br>    Counter-Defendants | |

    Before the Court is counter-defendant Baydelta Maritime Inc.'s ("Baydelta") motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, four causes of action in counterclaimant Hal Eltzroth's ("Eltzroth") First Amended Counterclaim ("FACC"), and to strike the jury demand in the FACC. Eltzroth has filed opposition, to which Baydelta has replied. Having reviewed the papers filed in support of and in opposition to the motion, the Court deems the matter suitable for decision on the papers, VACATES the hearing scheduled for August 4, 2006, and rules as follows.

**BACKGROUND**

Eltzroth was formerly employed as a licensed Master onboard Baydelta's tug boats "in and about the San Francisco Bay Area." (See FACC ¶ 3.) Eltzrtoh alleges that, while he was employed by Baydelta, he advised Baydelta it was not complying with federal regulations governing the minimum number of employees that must be employed on tugging vessels and the maximum amount of hours such employees could work. (See FACC ¶¶ 11-14.) Accordingly to Eltzroth, when he continued to complain and advised Baydelta he would not work under such conditions, Baydelta terminated his employment "under the pretext of misconduct." (See FACC ¶ 16.)

**DISCUSSION**

In his FACC, Eltzroth alleges six causes of action against Baydelta. Baydelta asserts that four of the causes of action, specifically, the Third through Sixth Causes of Action, are preempted by federal admiralty law.[1]

**A. Third Cause of Action (Retaliation in Violation of Cal. Labor Code § 1102.5)**

The California Labor Code prohibits an employer from "retaliat[ing] against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." See Cal. Lab. Code § 1102.5(c). In his Third Cause of Action, Eltzroth alleges Baydelta violated § 1102.5(c) by terminating him when he refused to work in a manner that would violate the "12-hour rule" set forth in federal regulations.[2] (See FACC ¶¶ 32-36.)

//
//
//

---

[1] Two of Eltzroth's causes of action are contractual claims, specifically, the First and Second Causes of Action. Baydelta does not argue such claims are subject to dismissal.

[2] Eltzroth alleges that under the "12-hour rule," towing vessels of "at least 8 meters which are underway for more than 12 hours in any 24 hour period must provide a minimum of a two-watch system," and that "[i]n no case may the crew of any watch work more than 12 hours in any 24-hour period, except in an emergency." (See Compl. ¶ 32 (citing 46 C.F.R. § 15.705).)

Baydelta argues that Eltzroth's claim under § 1102.5 is preempted by 46 U.S.C. § 2114, which provides:

> A person may not discharge or in any manner discriminate against a seaman because –
>
> (A) the seaman in good faith has reported or is about to report to the Coast Guard or other appropriate Federal agency or department that the seaman believes that a violation of a maritime safety law or regulation prescribed under that law or regulation has occurred; or
>
> (B) the seaman has refused to perform duties ordered by the seaman's employer because the seaman has a reasonable apprehension or expectation that performing such duties would result in serious injury to the seaman, other seamen, or the public.

See 46 U.S.C. § 2114(a)(1)

As noted, Eltzroth alleges he worked for Baydelta on vessels in the San Francisco Bay.[3] States "possess broad authority under their police powers to regulate the employment relationship to protect resident workers," including maritime employees. See Pacific Merchant Shipping Ass'n v. Aubry, 918 F. 2d 1409, 1415 (9th Cir. 1990) (holding California overtime laws not preempted by federal admiralty law, when applied to "seamen working on territorial waters and on the high seas off the California coast and to maritime employees working primarily on the high seas off the California coast, when the vessels on which the employees work do not engage in foreign, intercoastal, or coastwise voyages"), cert. denied, 504 U.S. 979 (1992). Such state powers are "not to be superseded by federal legislation unless that was the clear and manifest purpose of Congress." See id. at 1416 (alteration, citation, and internal quotation omitted). "[S]tates may supplement federal admiralty law as applied to matters of local concern, so long as state law does not actually conflict with federal law or interfere with the uniform working of the maritime legal system." Id. at 1422 (9th Cir. 1990) (emphasis in original).

Baydelta cites no authority for the proposition that Congress intended § 2114 to preempt state law governing retaliation, nor does Baydelta identify how § 1102.5 conflicts

---

[3] Nothing in the FACC suggests Eltzroth engaged in voyages anywhere except the San Francisco Bay Area.

with § 2114 or otherwise interferes with uniform application of § 2114 or any other admiralty law, at least as applicable to persons who work on vessels in the San Francisco Bay Area. Although Baydelta asserts, for the first time in its reply, that the purposes of § 2114 would be "thwarted" if a seaman were allowed to bring a state law claim for retaliation without having first reported the asserted violation to the Coast Guard, (see Baydelta's Reply at 3:11-19), such argument is unavailing; a seaman can state a claim under § 2114 even if the seaman has not reported the violation to the Coast Guard. See 46 U.S.C. § 2114(a)(1)(B).

A motion to dismiss can be granted only if appears from the face of the pleading that the plaintiff is not entitled to relief. See Clegg v. Cult Awareness Network, 18 F. 3d 752, 754 (9th Cir. 1994) (holding, on motion to dismiss, district court's "[r]eview is limited to the contents of the complaint"). Baydelta has failed to show, from the face of the FACC, that Eltzroth's claim under § 1102.5 is preempted by federal law.

Accordingly, Baydelta has not shown it is entitled to dismissal of the Third Cause of Action.[4]

**B. Fourth Cause of Action (Wrongful Discharge in Violation of Public Policy)**

California law provides for a "tort cause of action for wrongful terminations that violate public policy." See Freund v. Nycomed Amersham, 347 F. 3d 752, 758 (9th Cir. 2003). In his Fourth Cause of Action, Eltzroth alleges his termination was in violation of public policies embodied in § 1102.5 of the California Labor Code and in federal regulations governing the maximum hours seamen are allowed to work.

Baydelta argues that the Fourth Cause of Action is preempted by "federal maritime law." (See Baydelta's Mot. at 6:2.) Baydelta cites to no particular federal statute in that regard, relying instead on "general maritime law." See id. at 6:7; see e.g., Pacific Merchant Shipping Ass'n, 918 F. 2d at 1420 (considering merits of defense that state overtime laws were preempted by specific federal statute and by "general admiralty law").

---

[4] In his opposition, Eltzroth states he is prepared to allege a cause of action under § 2114(a)(1)(B). The Court will afford Eltzroth leave to so amend, if he wishes to plead such claim in the alternative, or in addition, to his claim under § 1002.5.

4

In support of its argument, Baydelta cites <u>Feemster v. BJ-Titan Services Co./Titan Services, Inc.</u>, 873 F. 2d 91, 93 (5th Cir. 1989), in which the Fifth Circuit held federal law does not provide for a "right of action under general maritime law for wrongful discharge for refusal to perform an unlawful act," where the act is the employer's failure to comply with federal law providing that a vessel navigated by one person may not be operated more than twelve hours in a twenty-four hour period.  <u>See</u> <u>id</u>. at 92-93.  As Eltzroth points out, however, the Court of Appeals in <u>Feemster</u> was not asked to consider whether state law providing such a cause of action would be preempted by federal law.

As to that specific issue, whether general admiralty law preempts state causes of action for wrongful termination in violation of public policy, the Courts of Appeals have reached differing views.  <u>See</u> <u>Zbylut v. Harvey's Iowa Management Co., Inc.</u>, 361 F. 3d 1094, 1095 (8th Cir. 2004) (holding state law claim for wrongful discharge in violation of public policy not preempted by general admiralty law); <u>Meaige v. Hartley Marine Corp.</u>, 925 F. 2d 700, 702-03 (4th Cir. 1991) (holding state law claim for wrongful discharge in violation of public policy preempted by general admiralty law).  Although the Ninth Circuit has not addressed the precise issue, it has, as discussed, considered the more general question of preemption by general maritime law.  <u>See</u> <u>Pacific Merchant Shipping Ass'n</u>, 918 F. 2d at 1422.  In the Ninth Circuit, the question of whether a state cause of action is preempted by general admiralty law "depends on the balance of federal and state interests involved," and requires the defendant to show that application of state law would "unduly disrupt[ ] federal maritime harmony."  <u>See</u> <u>id</u>. at 1424 (holding, after reviewing evidence in record, including purpose of work performed by plaintiffs, residency of plaintiffs, and geographic location of voyages where work performed, that "application of the state's overtime law will not disrupt international or interstate commerce").

Here, as noted, Eltrzoth alleges he worked for Baydelta on vessels in the San Francisco Bay Area.  Assuming such allegation to be true, it would be premature to find, from the face of the FACC, that application of California law to such an employee, allowing a cause of action for termination in violation of public policy, would unduly disrupt

5

1  international or interstate commerce or otherwise unduly disrupt federal maritime harmony.

2  Cf. Oil, Chemical and Atomic Workers Int'l Union, AFL-CIO v. Mobil Oil Corp., 426 U.S.

3  407, 410, 420 n. 12 (1976) (holding, after reviewing evidence offered at court trial, Texas

4  "right-to-work" laws inapplicable to seamen who "spend the vast majority of their working

5  hours on the high seas"; observing, by contrast, state could apply "right-to-work laws to

6  maritime workers, such as longshoreman, whose job situs is within the State").

7  Accordingly, Baydelta has not shown it is entitled to dismissal of the Fourth Cause of

8  Action.

9  **C. Fifth Cause of Action (Failure to Provide/Enforce Meal Breaks and Rest Period)**

10  Under California law, an employer "may not employ an employee for a work period

11  of more than five hours per day without providing the employee with a meal period of not

12  less than 30 minutes" and "may not employ an employee for a work period of more than 10

13  hours per day without providing the employee with a second meal period of not less than

14  30 minutes." See Cal. Labor Code § 512(a). In his Fifth Cause of Action, Eltzroth alleges

15  that during his employment he did not receive the meal breaks required by § 512(a).

16  Baydelta argues that Eltzroth's claim under § 512(a) is preempted by 46 U.S.C.

17  § 8104, which limits the amount of time a seaman may work on a vessel. See, e.g., 46

18  U.S.C. § 8104(a) (providing owner of vessel "may permit an officer to take charge of the

19  deck watch on a vessel when leaving or immediately after leaving port only if the officer has

20  been off duty for at least 6 hours within the 12 hours immediately before the time of

21  leaving"). According to Baydelta, if it is required to provide meal breaks under California

22  law, it would be required to employ a larger crew. Thus, Baydelta argues, § 512(a) conflicts

23  with § 8104. Baydelta points to nothing in the FACC, or otherwise, to support its assertion

24  that application of § 512(a) would require Baydelta to hire additional crew, however. In any

25  event, Baydelta fails to show how hiring additional crew would conflict with § 8104 or other

26  federal maritime law. Consequently, Baydelta has not shown a conflict exists between §

27  512(a) and either specific or general maritime law.

28  Further, to the extent Baydelta relies on general admiralty law, the Court, for the

1 reasons expressed above, finds the issue of whether such general law preempts
2 application of § 512(a) cannot be resolved from the face of the complaint.  See, e.g., Pacific
3 Merchant Shipping Ass'n, 918 F. 2d at 1425 (determining, after reviewing evidence in
4 record, whether general admiralty law preempted application of state overtime laws to
5 certain types of maritime employees).
6 	Accordingly, Baydelta has not shown it is entitled to dismissal of the Fifth Cause of
7 Action.

**D.  Sixth Cause of Action (Violation of Cal. Bus. & Prof. Code §§ 17200 et seq.)**

9 	In the Sixth Cause of Action, Eltzroth alleges that the substantive violations set forth
10 in the Third and Fifth Causes of Action are "unfair" business practices under California law,
11 specifically, § 17200 of the Business and Professions Code.  (See FACC ¶ 47.)  Baydelta
12 argues it is entitled to dismissal of such claim because the Third and Fifth Causes of Action
13 are subject to dismissal.  As set forth above, however, Baydelta has not shown either the
14 Third or the Fifth Cause of Action is subject to dismissal.
15 	Accordingly, Baydelta has not shown it is entitled to dismissal of the Sixth Cause of
16 Action.

**E.  Jury Demand**

18 	Baydelta seeks to strike the jury demand included in the FACC, on the ground
19 Eltzroth is not entitled to a jury because Eltzroth has not alleged "independent jurisdictional
20 grounds" for the claims in the FACC.  (See Baydelta's Mot. at 8:22-26.)
21 	Where, as here, a plaintiff alleges a complaint in admiralty, the defendant is entitled
22 to a jury trial on counterclaims "cognizable in admiralty" if the defendant alleges an
23 "independent" basis for jurisdiction over such claims.  See Wilmington Trust v. U.S. District
24 Court, 934 F. 2d 1026, 1031-32 (9th Cir. 1991), cert. denied, 503 U.S. 966 (1992).  If the
25 defendant's counterclaims are "not cognizable in admiralty," the defendant is entitled to a
26 jury trial on those counterclaims, whether or not the defendant has "alleged independent
27 bases of jurisdiction."  See id.
28 	In opposition, Eltzroth does not assert his counterclaims are not cognizable in

7

admiralty.  Rather, he argues, without elaboration, that he has adequately alleged an independent basis for jurisdiction.  The Court disagrees.

Accordingly, the Court will strike the jury demand, without prejudice to Eltzroth's filing a Second Amended Counterclaim to include therein an allegation setting forth an independent basis for jurisdiction.

## CONCLUSION

For the reasons stated above, Baydelta's motion to dismiss and to strike the jury demand is hereby GRANTED in part and DENIED in part, as follows:

1. The motion to strike the jury demand is hereby GRANTED and the jury demand is STRICKEN, without prejudice.

2. In all other respects, the motion is DENIED.

3. Eltzroth may, no later than August 18, 2006, file a Second Amended Counterclaim to restate his jury demand and allege an independent basis for jurisdiction, as well as to plead a claim under 46 U.S.C. § 2114(a)(1)(B).

**IT IS SO ORDERED.**

Dated: August 1, 2006

MAXINE M. CHESNEY
United States District Judge